UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                            :
UNITED STATES OF AMERICA,                   :
                                            :    **Memorandum and Order**
                                            :
            -against-                       :    90 CR 748 (DLI)
                                            :
RANDY PRINGLE,                              :
                                            :
                            Defendant.      :
                                            :
------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

On February 22, 1990, following a trial held before the Honorable Reena Raggi, then a United States District Judge of this court, a jury convicted defendant on all counts of a five-count superseding indictment. (Judgment, Docket No. 62, Ex. B, at 1.) Count One charged defendant with possession with intent to distribute in excess of fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). (*Id*.) Count Two charged defendant with unlawful possession and use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). (*Id*.) Counts Three, Four, and Five charged defendant with separate offenses of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(2). (*Id*.)

On July 16, 1992, Judge Raggi sentenced defendant to 210 months of imprisonment on Count One, 60 months of imprisonment on Count Two, to run consecutively to the sentence imposed on Count One, and prison terms of 120 months on each one of Counts Three, Four, and Five, to run concurrently with each other and the sentence imposed on Count One. (Sentencing Tr., Docket No. 62, Ex. C, at 20-21.) Judge Raggi also imposed a supervised release term of ten years on Count One and three years on each of the remaining counts to run concurrently with each other and the term imposed on Count One. (*Id* at 21.)

Defendant now moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) as a result of the amendments to the crack cocaine (or cocaine base) United States Sentencing Guidelines ("Sentencing Guidelines") promulgated by the United States Sentencing Commission and made effective by Congress on November 1, 2007, and which were applied retroactively, effective on March 3, 2008. U.S.S.G. §§ 1B10.10, 2D1.1. The government opposes defendant's request. For the reasons set forth below, defendant's motion is denied.

**Background**

On February 22, 1990, defendant was convicted following a jury trial of one count of possession with intent to distribute in excess of fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), one count of unlawful possession and use of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1), and three counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(2). Following defendant's conviction, the United States Probation Department ("Probation Department") filed a Pre-Sentence Report ("PSR") with the court. (PSR, Docket No. 62, Ex. A.) At the time of defendant's July 16, 1992 sentencing, the Sentencing Guidelines base offense level ("BOL") for the crack cocaine-related offense charged in Count One was thirty-two.[1] (*Id*. at 4.) The combined BOL for the firearm possession offenses charged in Counts Three, Four, and Five was also thirty-two. (*Id*. at 5.) Defendant's total adjusted offense level ("TOL") for Counts One, Three, Four, and Five was thirty-two. (*Id*. at 6.) Defendant's criminal history computation resulted in a criminal history score of nineteen. (*Id*. at 11.) Two points were added to defendant's criminal history score because he committed the offenses less than two years after his release from custody on a prior conviction. (*Id.*) Defendant's total criminal history score of

---

[1] The Sentencing Guidelines were mandatory at the time defendant was sentenced in this case. The Sentencing Guidelines are now advisory. *See United State v. Booker*, 543 U.S. 220 (2005) and its progeny.

twenty-one resulted in a criminal history category of VI. (*Id.* at 4-5.) Based on the TOL for Counts One, Three, Four, and Five of thirty-two and a criminal history category of VI, the Sentencing Guidelines range for those crimes was 210 to 262 months. (*Id.* at 12.) Pursuant to the statute, Count Two carried a mandatory consecutive sentence of sixty months. (*Id.* at 5.) The Probation Department suggested that, due to the high number of prior arrests for narcotics sale and possession, which were not reflected in defendant's criminal history category due to the operation of criminal history calculation guidelines, the court could consider an upward departure from the Sentencing Guidelines range. (*Id.* at 16.)

Defendant was sentenced to 210 months of imprisonment on Count One, 60 months of imprisonment on Count Two, to run consecutively to the sentence imposed on Count One, and sentences of 120 months of imprisonment on Counts Three, Four, and Five, to run concurrently with each other and with the sentence imposed on Count One, making defendant's total sentence 270 months. Notably, due to an administrative error by the government, defendant was not charged during sentencing with possession with intent to distribute narcotics by a convicted felon in violation of 21 U.S.C. § 851(c). As a result, defendant was not sentenced to a twenty-year statutory minimum term of incarceration on the narcotics charge in accordance with 21 U.S.C. § 851(a)(1). (Sentencing Tr., Docket No. 62, Ex. C, at 2, 16; PSR, Docket No. 62, Ex. A, at 12.)

According to the Bureau of Prisons, after accounting for "good time" earned by defendant to date, and projected credit for future good time earned, defendant's term of imprisonment will expire on July 25, 2010. (Gov't Resp. to Order to Show Cause, at 10.) In an addendum to the PSR dated March 26, 2008, the Probation Department projected that defendant's release date is June 14, 2010. (Addendum to PSR, Docket No. 62, Ex. C, at 1.)

During his almost nineteen years of imprisonment for these offenses, defendant has been charged with fourteen disciplinary infractions for his involvement in ten incidents. On four occasions, defendant was disciplined for refusing to obey an order. (*Id*. at 3-4.) Defendant was also disciplined for insolence toward prison staff on four occasions. (*Id*.) Twice defendant was disciplined for committing an assault without serious injury. (*Id*.) Defendant was also disciplined for disruptive behavior on one occasion and for engaging in a group demonstration on two occasions. (*Id*.) Finally, defendant was disciplined for being in an unauthorized area on one occasion. (*Id*.)

While incarcerated, defendant completed the following Adult Continuing Education courses: Black History, Fitness 1, Investing, Health Fair, and Fitness Program and General Nutrition. (*Id*. at 3.) Defendant also completed a counseling program entitled, Cage Your Rage. (*Id*.) Defendant did not complete the General Education Development ("GED") program.[2] Defendant apparently has not participated in any form of vocational training.

Prior to the crimes charged in this case, defendant had numerous contacts with the criminal justice system. (PSR, Docket No. 62, Ex. A, at 6-11.) Between the age of seventeen and twenty-five, defendant was charged with forty-one offenses. (*Id*.) Thirty-four of these offenses involved possession or sale of controlled substances, including crack cocaine and marijuana. (*Id*.) The other offenses committed by defendant during this period include, criminal trespass, two instances of disorderly conduct, two instances of assault, use of a stolen vehicle, and grand larceny. (*Id*.) Notably, the original charges for defendant's disorderly conduct convictions at age seventeen and eighteen were criminal sale of a controlled substance, and in one instance, defendant was also charged with resisting arrest. (*Id*.) At the time of defendant's arrest in this case, two other charges were pending against him: 1) criminal sale of a controlled

---

[2] Defendant "terminated his educational pursuits in the 9th grade." (PSR, Docket No. 62, Ex. A, at 14.)

substance in the third degree based on his arrest on February 21, 1990, for selling fifty-three vials of crack cocaine to an undercover New York City police officer in Queens County, New York; and 2) criminal sale of a controlled substance in the third degree based on his arrest two weeks later, on March 7, 1990, in Queens County, New York, after police officers observed him line several people against a fence to sell them vials of cocaine. (*Id*. at 11-12.) Defendant has never maintained legitimate employment.[3]

The charges in this case stem from defendant's arrest on August 24, 1990. (PSR, Docket No. 62, Ex. A, at 2.) On that date, Drug Enforcement Administration ("DEA") agents observed defendant making phone calls from a public telephone booth. (*Id*.) Defendant carried a black knapsack and had a bulge in the waistband of his pants. (*Id*.) After defendant entered a nearby car and drove away, the agents pulled him over. (*Id*.) The bulge in his waistband turned out to be a concealed 9mm semi-automatic pistol, and defendant was arrested. (*Id*.) Defendant's knapsack contained $5,000, as well as two slips of paper, resembling drug accounting records. (*Id*.) Upon arrest, defendant repeatedly yelled "Freddy," a code word intended to alert persons nearby to the presence of law enforcement officers. (*Id*. at 4.) A subsequent search of defendant's apartment[4] yielded approximately 800 vials containing a total of 75.280 grams of 96% pure cocaine base, an assortment of drug paraphernalia including sodium bicarbonate and drug records, an Uzi Mini Carbine gun, a .380 caliber Grendel semi-automatic pistol, and ammunition. (*Id*. at 3.) On two occasions shortly after his arrest, defendant expressed regret for not killing the arresting DEA agents with his 9mm semi-automatic pistol when he had the opportunity to do so. (*Id*.) Defendant is alleged to have made offensive moves and gestures towards agents during

---

[3] Defendant claims to have periodically worked as an "off the books" laborer loading and unloading trucks, but this could not be verified. (PSR, Docket No. 62, Ex. A, at 15.)
[4] Defendant denied living at the apartment and stated that his girlfriend lived there. (PSR, Docket No. 62, Ex. A, at 3.)

5

post-arrest interviews. (*Id.*) Defendant also told DEA agents that he stayed in physical shape by "busting heads." (Sentencing Tr., Docket No. 62, Ex. C, at 12.) During a pre-sentence interview, defendant denied making any threatening statements to DEA agents and denied any connection to the drugs and weapons recovered from the apartment. (PSR, Docket No. 62, Ex. A, at 3.)

**Discussion**

Pursuant to 18 U.S.C. § 3582(c)(2), a court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The Sentencing Commission "promulgated Amendment 706 to the Guidelines, effective November 1, 2007, which reduced by two levels the base offense level associated with each enumerated quantity of crack cocaine." *United States v. Savoy*, No. 08-CR-4900, 2009 WL 1457976, at *2 (2d Cir. May 27, 2009) (citing U.S.S.G. Supp. to App. C, amend. 706 (2008)). The Sentencing Commission later voted to apply the amendment retroactively, effective March 3, 2008.

Defendant is eligible to receive a sentence reduction on Count One pursuant to the amendment to the Sentencing Guidelines.[5] U.S.S.G. § 1B1.10. At the time of defendant's sentencing, the BOL associated with the charge in Count One was thirty-two. In light of defendant's criminal history category of VI, the appropriate Sentencing Guidelines range was 210 to 262 months. As revised, the BOL associated with the charge in Count One is thirty. When coupled with defendant's criminal history category of VI, the revised Sentencing Guidelines range is 168 to 210 months.

---

[5] Defendant's requests for a full resentence and a sentence reduced below the guidelines range pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *Kimbrough v. United States*, 552 U.S. 85 (2007) are denied. The policy statements in U.S.S.G. §§ 1B1.10(a)(3) and 1B1.10(b)(1) make clear that section 3585(c) does not authorize the court to take such action in this case. *Savoy*, 2008 WL 1457976, at *2.

In determining whether and to what extent a reduction in sentence is warranted pursuant to section 3582(c)(2), the court must consider the factors set forth in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.10, Policy Statement, comment. (n.1 (B)(i)). Section 3553(a) states that a court "shall impose a sentence sufficient, but not greater than necessary" to fulfill certain penological purposes, such as:

> the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

§ 3553(a)(2). A court must also consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; . . . (3) the kinds of sentences available; (4) [the sentencing range established by the Sentencing Guidelines]; (5) [any pertinent Sentencing Guidelines policy statement]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

§ 3553(a). The court must also consider "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment," as well as the "post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment." U.S.S.G. § 1B1.10, Policy Statement, comment. (n.1 (B)(ii), (B)(iii)).

The PSR reflects that defendant has engaged in little productive activity during his adult life, as much of it has been spent serving prison terms on these and other charges, some of which involved acts of violence. From age seventeen to twenty-five, defendant was charged with forty-one offenses, which does not include the crimes charged in this case or the additional crack cocaine offenses pending against him in New York state court at the time of his arrest. (PSR,

Docket No. 62, Ex. A, at 6-12.)  Those offenses range from disorderly conduct and criminal sale of marijuana to grand larceny and assault.  (*Id*.)  Many of defendant's prior crimes were drug offenses.  There is nothing in the PSR or the sentencing minutes of this case indicating that defendant's involvement in drug offenses was the result of drug addiction.  The court can only conclude that defendant's involvement with drugs was purely for profit.  The most troubling aspect of defendant's criminal behavior is that he repeatedly chose to engage in illegal activity within days, weeks, or months of his release from prison, either on bond or after sentence, on these various charges.  (*Id*.)  The court is further troubled by the fact that defendant's crimes became more serious over time.  Defendant's criminal record indicates that he does not have any respect for the law or authority and puts his own interests above those of society.  Consequently, the court can only conclude that defendant will likely recidivate upon release and pose a threat to the safety of the community.

In this case, it appears that DEA agents arrested defendant just as his criminal ambitions reached new heights.  After DEA agents observed defendant making phone calls from a public telephone booth while carrying a black knapsack and displaying a bulge in the waistband of his pants, they stopped and searched him, discovering that the bulge in his waistband was a concealed 9mm semi-automatic pistol.  (PSR, Docket No. 62, Ex. A, at 2.)  Defendant's knapsack contained $5,000, as well as two slips of paper, resembling drug accounting records.  (*Id*.)  A subsequent search of defendant's apartment yielded the makings of a robust crack cocaine operation, which included approximately 800 vials 96% pure cocaine base, an assortment of drug paraphernalia, an Uzi Mini Carbine gun, a .380 caliber Grendel semi-automatic pistol, and ammunition.  (*Id*. at 3.)  The court finds these offenses to be very serious.

Defendant's actions after arrest further illustrate why he must remain incarcerated. Upon arrest, defendant repeatedly yelled "Freddy," a code word intended to alert persons nearby to the presence of law enforcement officers, in an effort to thwart further effective law enforcement activity in the area and, thus, obstruct justice. (*Id*. at 4.) Defendant is also alleged to have made offensive moves and gestures towards agents during post-arrest interviews, and twice expressed regret for not killing the arresting DEA agents with his 9mm semi-automatic pistol when he had the opportunity to do so. (*Id*.) He also told a DEA agent that he stays in shape by "busting heads." (Sentencing Tr., Docket No. 62, Ex. C, at 12.) Defendant's subsequent denials of these threatening statements to DEA agents and of any connection to the drugs and weapons recovered from the apartment are unpersuasive in light of his criminal history and the offense conduct set forth in the PSR. (PSR, Docket No. 62, Ex. A, at 4.) These actions and statements give the court further concern that defendant will pose a safety threat to the community in which he is released.

Defendant's post-incarceration record illustrates that he has not used the time while incarcerated on these charges productively in an effort to reshape his life. First, while the Addendum to the PSR does indicate that defendant has taken some measures to educate himself during his almost nineteen years of incarceration, defendant has not completed the GED program or completed any vocational programs to enable him to obtain and maintain lawful employment upon release—something he has failed to do throughout his life. (Addendum to PSR, Docket No. 62, Ex. C, at 3.) The Addendum to the PSR also illustrates that defendant still does not respect authority. Defendant was disciplined for fourteen infractions involving ten incidents during his term of incarceration. (*Id*. at 3-4.) Though only two of those incidents were violent in nature, the remaining incidents show that defendant either lacks the ability to control his impulses or is

simply unwilling to do so. As such, the court is greatly concerned about whether defendant is capable of leading a productive live in mainstream society.

Finally, the court believes that defendant was afforded substantial lenience during his original sentencing. For example, due to an administrative error on the part of the government, defendant avoided an additional charge of possession with intent to distribute narcotics by a prior felon in violation of 21 U.S.C. § 851(c), which carried a twenty-year statutory minimum term of incarceration. (Sentencing Tr., Docket No. 62, Ex. C, at 2, 16; PSR, Docket No. 62, Ex. A, at 12.) Further, defendant never accepted responsibility for his actions and showed absolutely no remorse for his wrongdoing during the entire proceedings. Judge Raggi made special note at sentencing that: 1) the government had made a "forceful argument" for the imposition of a 262-month prison sentence; 2) the minimal state sentences defendant had received had not deterred him from his life of drug dealing, and, indeed, his drug trafficking escalated from marijuana to crack; and 3) he felt no remorse. (Sentencing Tr., Docket No. 62, Ex. C, at 16-17.) The sentencing court added that it was concerned that defendant would not turn his life around, a factor which influenced the court's decision to impose a supervised release term of ten years. (*Id.* at 18.) Nevertheless, Judge Raggi sentenced defendant to the minimum sentence called for by the Sentencing Guidelines at that time. *See United States v. Jones*, No. 08-CR-1223, 2008 WL 4726292, at *1 (2d Cir. Oct. 29, 2008) (holding that a district court's decision fully complied with § 3582 and § 1B1.10 where the judge denied relief because, the defendant "was afforded substantial lenity at his original sentencing" and because even in light of the reduced Sentencing Guidelines range, the court would have imposed the same sentence after considering the factors enumerated by section 3355(a)). Accordingly, a reduction of defendant's sentence is unwarranted.

## Conclusion

In light of the foregoing, defendant's motion is denied.

SO ORDERED.

Dated: Brooklyn, New York
July 1, 2009

/s/
DORA L. IRIZARRY
United States District Judge